IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHERTINA KIRKMAN<br>3346 137th Street<br>Cleveland, Ohio 44120 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| CLEVELAND METROPOLITAN SCHOOL<br>DISTRICT<br>1111 Superior Avenue<br>Suite 1800<br>Cleveland, Ohio 44114 | )<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| -and- | )<br>) | |
| CHRISTOPHER BURKHARDT<br>15515 Raya Oval<br>North Royalton, Ohio 44133 | )<br>)<br>)<br>) | |
| -and- | )<br>) | |
| STEPHANIE HOBBS<br>1111 Superior Avenue<br>Cleveland, Ohio 44114 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Archertina Kirkman, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Kirkman is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. Cleveland Metropolitan School District ("CMSD") is a public-school district in the state of Ohio that serves the city of Cleveland.

3. Upon information and belief, Christopher Burkhardt is a resident of the state of Ohio.

1

4. Burkhardt was at all times hereinafter mentioned, an individual who was an Executive Director at CMSD who acted directly or indirectly in the interest of CMSD.

5. Burkhardt was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

6. Burkhardt made, or participated in making the adverse actions asserted herein.

7. Upon information and belief, Stephanie Hobbs is a resident of the state of Ohio.

8. Hobbs was at all times hereinafter mentioned, an individual who was Director of Operations at Cleveland who acted directly or indirectly in the interest of CMSD.

9. Hobbs was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

10. Hobbs made, or participated in making the adverse actions asserted herein.

## JURISDICTION & VENUE

11. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Kirkman is alleging Federal Law Claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq*.

12. All material events alleged in this Complaint occurred in the county of Cuyahoga.

13. This Court has supplemental jurisdiction over Kirkman's state law claims pursuant to 28 U.S.C. § 1367 as Kirkman's state law claims are so closely related to her federal law claims that forms part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

15. Within 180 days of the conduct alleged below, Kirkman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-00595.

16. On or about June 29, 2019 the EEOC issued and mailed a Notice of Right to Sue letter to Kirkman regarding the Charges of Discrimination brought by Kirkman.

17. Kirkman received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

18. A true and accurate copy of Kirkman's Right to Sue is attached hereto as Exhibit A.

19. Kirkman has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

20. Kirkman has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

21. Kirkman is a former employee of CMSD.

22. Kirkman is 59 years of age.

23. Kirkman is African American.

24. CMSD hired Kirkman on or about June 30, 1997.

25. Kirkman began her employment at CMSD as a Junior Secretary.

26. In or about July 2016, Kirkman was promoted to an Office Specialist.

27. CMSD changed management in or about early 2017.

28. In or around March 2017, Christopher Burkhardt was assigned to the office where Kirkman worked.

29. Burkhardt is an Executive Director at CMSD.

30. Burkhardt is Caucasian.

31. When Burkhardt began working at CMSD, Kirkman was working as an Office Specialist at Central Warehouse.

32. Burkhardt was verbally aggressive towards Kirkman

33. Burkhardt began micromanaging every task Kirkman performed.

34. Burkhardt was not verbally aggressive in the work place to Kirkman's similarly situated non-African American coworkers.

35. Burkhardt did not micromanage Kirkman's similarly situated non-African American coworkers.

36. Burkhardt treated Kirkman differently than her similarly situated coworkers because of her race.

37. Burkhardt treated Kirkman differently than her similarly situated coworkers because she is African American.

38. In or around September 2017, Burkhardt informed Kirkman that she needed to look for new employment within, or outside of the school district.

39. Kirkman was devastated after receiving news from Burkhardt to look for new employment.

40. Kirkman was about four years away from retirement when Burkhardt informed her to look for new employment.

41. Prior to September 2017, Burkhardt had not provided Kirkman with any indication that her work was unsatisfactory pursuant to the disciplinary procedures of CMSD.

42. Burkhardt informed Kirkman that until she found new employment, she would be transferred out of her role as Office Specialist and placed into a new role as Area Supervisor for CMSD's cafeteria programs.

43. Kirkman had very little knowledge of the Area Supervisor position.

44. Kirkman did not apply for the Area Supervisor position.

45. The Area Supervisor was to ensure that each of the 18 cafeteria programs within the region assigned to Kirkman were within budget, ran efficiently, and that products ordered met district requirements.

46. As Area Supervisor, Kirkman was required to travel to the cafeteria's she managed.

47. As Area Supervisor, Kirkman was required to make sure the cafeterias in her region complied with health inspections and health codes.

48. Kirkman had no previous experience managing a cafeteria.

49. Kirkman had no previous experience of opening a new school and leading city inspections.

50. After being transferred to Area Supervisor position, Kirkman requested training from Burkhardt for being an Area Supervisor.

51. Burkhardt refused Kirkman's request for training.

52. Burkhardt told Kirkman that she had been with CMSD for so long she should already know how to perform the duties of an Area Supervisor.

53. Burkhardt placed Kirkman as Area Supervisor without training to force her to resign.

54. Around the time of Kirkman's new position of Area Supervisor, Burkhardt replaced Kirkman with a Caucasian female employee as Office Specialist.

55. Kirkman was made to train the new Caucasian female who replaced Kirkman as Office Specialist.

56. Burkhardt transferred Kirkman to another position because of her race.

57. Burkhardt transferred Kirkman to another position because she is African American.

58. Burkhardt transferred Kirkman to another position because of her age.

59. Other Area Supervisors were provided a computer by CMSD to order supplies for the cafeteria's they manage.

60. Kirkman was not provided a computer by CMSD.

61. Kirkman had to use her own personal computer to complete her necessary job duties.

62. Kirkman asked Defendants for a computer to complete orders, like other Area Supervisors.

63. Defendants refused Kirkman's request for a computer like other Area Supervisors.

64. Other Area Supervisors received cellphones provided by CMSD for communicating with the cafeteria's in their region.

65. Kirkman was not provided a cellphone by CMSD.

66. Kirkman had to use her own personal cellphone to complete her necessary job duties.

67. Kirkman asked Defendants for a cellphone to complete contact the cafeteria programs she was managing, like other Area Supervisors.

68. Defendants refused Kirkman's request for a cellphone like other Area Supervisors.

69. In or around January 2018, Kirkman was called into a meeting with Hobbs ("First Meeting").

70. Hobbs is Director of Operations for CMSD.

71. During the First Meeting, Hobbs informed Kirkman that she wanted Kirkman to resign on or before June 30, 2018.

72. During the First Meeting, Hobbs wanted Kirkman to resign so that CMSD could hire a new Area Supervisor by February 2018.

73. Kirkman did not want to resign her employment with CMSD.

74. During the First Meeting, Kirkman informed Hobbs that she wanted proper training and the tools provided to other Area Supervisors that was not provided to Kirkman.

75. A week after the First Meeting, Kirkman was called into another meeting, this time with Hobbs and Burkhardt ("Second Meeting").

76. During the Second Meeting, Kirkman was told that she was not doing well in her position as Area Supervisor.

77. During the Second Meeting, Kirkman confided that she was thrown into a new position, with no training, her requests for training were denied, and she was doing the best she could considering everything involved.

78. During the Second Meeting, Kirkman stated that she was using her personal computer and cellphone to complete her job duties and was not provided a cellphone or computer by CMSD to complete her necessary job duties.

79. During the Second Meeting, Burkhardt told Kirkman "based on what I have on you, if I put it into your file, you will not be able to work for any school, government, or city ever."

80. During the Second Meeting, Burkhardt's statement to Kirkman was to threaten her.

81. During the Second Meeting, Burkhardt threatened Kirkman to resign because of her race.

82. During the Second Meeting, Burkhardt threatened Kirkman to resign because she is African American.

83. During the Second Meeting, Burkhardt threatened Kirkman to resign based on her age.

84. During the Second Meeting, Hobbs and Burkhardt told Kirkman that a new Area Supervisor, Harry Swartzlander, will be riding along with Kirkman on her routes.

85. During the Second Meeting, Kirkman was informed that she was expected to train Swartzlander as a replacement for her position as Area Supervisor.

86. In or around March 2018, Kirkman submitted a written complaint to CMSD about the discrimination she was receiving ("Discrimination Complaint").

87. In the Discrimination Complaint, Kirkman provided details about who she was and the unwarranted decision to remove her from her position and throw her into a completely new and different role without training.

88. In the Discrimination Complaint, Kirkman explained that she believed she was being discriminated against because of her age and race.

89. In response to the Discrimination Complaint, Hobbs offered Kirkman a new position that had substantially less responsibility and pay.

90. Hobbs required that for Kirkman to accept the new position offered to her, Kirkman would have to withdraw the Discrimination Complaint.

91. Kirkman was forced to decline Hobbs' offer as she felt she could not withdraw the Discrimination Complaint.

92. On or about April 19, 2018, CMSD issued its preliminary termination notice to Kirkman ("Termination Notice").

93. A true and accurate copy of the Termination Notice is attached hereto as Exhibit 2.

94. The Termination Notice stated that Kirkman would be terminated effective June 30, 2018.

95. The Termination Notice stated that Kirkman would be paid for all unused accrued vacation time as of July 31, 2018.

96. Kirkman had over 1000 hours of vacation time, totaling about 125 days.

97. Defendants paid Kirkman only paid for 75 days of vacation time, or about 600 hours of vacation time.

98. Kirkman is owed 50 days of vacation time, which is the equivalent of 400 hours of vacation time.

99. At the time of her termination, Kirkman was 58 years of age.

100. Defendants terminated Kirkman because of her race.

101. Defendants terminated Kirkman because she is African American.

102. Defendants terminated Kirkman based on her age.

103. There is a causal connection between Kirkman's termination and her race.

104. There is a causal connection between Kirkman's termination and her age.

105. Defendants set Kirkman up to fail by transferring her to a new position with no training.

106. Kirkman complained about not receiving the entire balance of vacation time owed to her.

107. Defendants owe Kirkman an additional 50 days of vacation time, equaling to 400 hours of vacation time.

108. As a result of Defendants' unlawful conduct, Kirkman suffered, and continues to suffer damages.

**COUNT I: AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 621 *ET SEQ.***

109. Kirkman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

110. At all times referenced herein, Kirkman was a member of a statutorily-protected class under 29 U.S.C. § 631(a).

111. CMSD terminated Kirkman because of her age.

112. CMSD violated 29 U.S.C. § 621, *et seq.* and 29 U.S.C. § 623(a) by discriminating against Kirkman based on her age.

113. Upon information and belief, CMSD replaced Kirkman with a substantially younger employee following Kirkman's termination.

114. Alternatively, Defendants assigned Kirkman's job duties to one or more substantially younger employees.

115. As a direct and proximate cause of CMSD's conduct, Kirkman suffered and will continue to suffer damages.

### COUNT II: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2

116. Kirkman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. At all times relevant during her employment, Kirkman, as an African-American, was a member of a statutorily-protected class under 42 U.S.C. § 2000e-2, *et seq.*

118. CMSD treated Kirkman differently from other similarly situated employees based on her race.

119. CMSD terminated Kirkman based her race.

120. CMSD violated 42 U.S.C. § 2000e-2, *et seq.* by discriminating against and terminating Kirkman based on her race.

121. As a direct and proximate cause of CMSD's conduct, Kirkman suffered and will continue to suffer damages.

### COUNT III: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01, *ET SEQ.*

122. Kirkman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. At all times relevant during her employment, Kirkman, as an African-American, was a member of a statutorily-protected class under R.C. § 4112.01, *et seq.*

124. CMSD treated Kirkman differently from other similarly situated employees based on her race.

125. CMSD terminated Kirkman based on her race.

126. CMSD violated R.C. § 4112.01, *et seq.* by discriminating against and terminating Kirkman based on her race.

127. As a direct and proximate cause of CMSD's conduct, Kirkman suffered and will continue to suffer damages.

## COUNT IV: RETALIATORY DISCRIMINATION

128. Kirkman restates each and every prior paragraph of this complaint, as if it were fully restated herein.

129. As a result of the Defendant's discriminatory conduct described above, Kirkman complained about the age discrimination she was experiencing.

130. As a result of the Defendant's discriminatory conduct described above, Kirkman complained about the rage discrimination she was experiencing.

131. Subsequent to Kirkman reporting race discrimination she was terminated.

132. Subsequent to Kirkman reporting age discrimination she was terminated.

133. Defendant's actions were retaliatory in nature based on Kirkman's opposition to the unlawful discriminatory conduct.

134. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

135. Kirkman suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

136. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Kirkman, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: UNLAWFUL WITHHOLDING OF EARNED VACATION PAY
### (Against Defendant CMSD only)

137. Kirkman restates each and every prior paragraph of this complaint, as if it were fully restated herein.

138. Kirkman received 30 days of vacation pay each year.

139. Kirkman's Termination Notice stated that Kirkman would be compensated for all unused accrued vacation time.

140. CMSD withheld approximately 400 hours of unused accrued vacation time.

141. Kirkman is entitled to payment for the full balance of her unpaid vacation time. See *Korsnak v. CRL, Inc.*, 8th Dist. Cuyahoga No. 84403, 2004-Ohio-6116.

142. In depriving Kirkman of her unused vacation time Olmsted Falls acted with malice and conscious disregard of her rights.

143. As a result of CMSD's wrongful conduct as stated above, Kirkman has suffered and continues to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Kirkman demands from Defendant the following:

(a) Issue a permanent injunction:

    (i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (iv)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Kirkman to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate McIntosh for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Kirkman's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

*/s/ Tina M. Scibona*
Tina M. Scibona (0092008)
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: tina.scibona@spitzlawfirm.com
       chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Archertina Kirkman*

## JURY DEMAND

Plaintiff Archertina Kirkman demands a trial by jury by the maximum number of jurors permitted.

*/s/ Tina M. Scibona*
Tina M. Scibona (0092008)
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
